IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHELE BAILON,                  §
                                 §
        Plaintiff,               §
                                 §
v.                               §        Civil Action No. **3:16-CV-1022-L**
                                 §
LANDSTAR RANGER, INC.,           §
                                 §
        Defendant.               §

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Michelle Bailon's ("Plaintiff" or "Ms. Bailon") two Renewed Motions to Exclude the Opinions and Testimony of Officer Christopher Cortemelia (Docs. 57 & 58), both filed December 9, 2019, and Plaintiff's Motion to Set a Status Conference (Doc. 62), filed June 19, 2020.  After consideration of the motions, response, reply, evidence, and applicable law, the court **denies as moot** Plaintiff's First Renewed Motion to Exclude (Doc. 57)[1]; **grants** Plaintiff's Second Renewed Motion to Exclude (Doc. 58); and **denies** Plaintiff's Motion to Set a Status Conference (Doc. 62).

## I.    Procedural and Factual Background

This action arises from a vehicular accident between Ms. Bailon and Camara Percival, Jr. ("Mr. Percival"), an 18-wheeler driver for Landstar Ranger, Inc. ("Defendant" or "Landstar"), that occurred near the interchange between Interstate Highway 20 East and Interstate Highway 635 North in Balch Springs, Texas, on April 27, 2015. Following the accident, Ms. Bailon filed this action on March 4, 2016, in the 44th Judicial District Court of Dallas County, Texas, against

---

[1] Plaintiff filed both Renewed Motions to Exclude on the same day.  Upon review of the Motions, the court determines that the second motion (Doc. 58) amends the appendix to the previous motion (Doc. 57).  The court, therefore, determines that the first Renewed Motion is mooted by the Second Renewed Motion.

Landstar and Mr. Percival for negligence, negligence per se, and gross negligence.  Specifically, Ms. Bailon contends that Mr. Percival, while acting within the course and scope of his employment with Landstar, was negligent, negligent per se, and grossly negligent when his vehicle violently collided with her vehicle on April 27, 2015. She contends that she sustained severe injuries as a result and seeks compensation for those injuries.  On April 27, 2017, Mr. Percival died, and, on July 12, 2017, the court administratively closed this action pending resolution of Mr. Percival's estate. On November 14, 2017, Ms. Bailon nonsuited Mr. Percival, and the court dismissed him from this action without prejudice on November 30, 2017, and directed the clerk of court to reopen this action against Landstar.

Landstar seeks to present Officer Christopher Cortemelia ("Officer Cortemelia") as an expert witness at trial to testify that Ms. Bailon caused the accident at issue by crossing into Mr. Percival's lane and clipping the front bumper of the 18-wheeler that Mr. Percival was driving.  On September 21, 2018, Ms. Bailon filed a Motion to Exclude the Opinions and Testimony of Officer Cortemelia (Doc. 44).  In the court's Memorandum Opinion and Order of September 27, 2019 (Doc. 54), it denied without prejudice Plaintiff's Motion to Exclude, determining that neither party had sufficiently explained why Officer Cortemelia's testimony should be admitted or why it should be excluded.  For this reason, the court allowed the parties to redepose Officer Cortemelia on a limited basis and to ask specific and detailed questions regarding his qualifications to render an opinion regarding the cause of the accident. Mem. Op. & Order of Sept. 27, 2019 at 11.  The court also instructed that during the second deposition Officer Cortemelia must detail his experience and state specifically what an accident investigation entails.  The court further instructed that if Officer Cortemelia renders an opinion, he must give the underlying facts that support the opinion and explain how his experience supports it. *Id.*

**Memorandum Opinion and Order – Page 2**

In accordance with the court's opinion, the parties redeposed Officer Cortemelia, and, on December 9, 2019, Ms. Bailon filed her Renewed Motion to Exclude (Doc. 58).[2]  On December 30, 2019, Landstar filed its Response to Plaintiff's Renewed Motion to Exclude (Doc. 59), and, on January 10, 2020, Ms. Bailon filed her Reply (Doc. 61). On June 19, 2020, Ms. Bailon filed a Notice of Completion of Briefing and Motion to Set a Status Conference (Doc. 62), which is also pending before the court.

## II.     Legal Standard - Expert Testimony Standard Under Federal Rule of Evidence 702

The admissibility of evidence is a procedural issue governed by federal law.  *See Reed v. General Motors Corp*., 773 F.2d 660, 663 (5th Cir. 1985).  Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589 (1993).  "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge" that is non-scientific in nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  In *Kumho Tire,* the Supreme Court resolved a

---

[2] As the court previously noted, Ms. Bailon filed two Renewed Motions to Exclude the testimony of Officer Cortemelia. The motions, however, are identical, except for adjustments to the appendix.  Accordingly, the court denies as moot Plaintiff's first Renewed Motion to Exclude (Doc. 57) and will rule on the Second Renewed Motion filed as Document 58.

split among the circuits and held that *Daubert*'s "gatekeeping" function applied to all expert opinion testimony based on specialized knowledge, not merely scientific expert testimony.

As part of its gatekeeping role, the court determines the admissibility of expert testimony based on Rule 702, and *Daubert* and its progeny.  The amendments to Federal Rule of Evidence 702, effective December 1, 2000, essentially codify *Daubert* and *Kumho Tire.* The Advisory Committee's Notes to Rule 702 state that the determination of whether an expert's opinions are reliable is based upon sufficient facts or data that calls for a "quantitative rather than qualitative analysis."   In addressing this issue, the "question is whether the expert considered enough information to make the proffered opinion reliable. . . . The expert must base [his or her] opinion on at least the amount of data that a reliable methodology demands." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6268 (2d ed. 1987).  Further, in reviewing a *Daubert* challenge, the court makes no credibility determinations; it only decides whether the threshold reliability standards have been satisfied. *See* Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

"The court may admit proffered expert testimony only if the proponent . . . demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *E.E.O.C. v. S & B Indus., Inc.*, No. 3:15-CV-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan. 24, 2017) (citing *Kumho Tire Co.*, 526 U.S. at 147) (internal quotation marks omitted). The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turn[] upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). To be relevant, "expert testimony

[must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that an "expert has reliably applied the principles and methods to the facts of the case").

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Fed. R. Evid. 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight*, 482 F.3d at 355 (citation and internal quotation marks omitted). "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief," *Johnson*, 685 F.3d at 459 (internal quotation marks omitted); however, "there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) (internal quotation marks omitted). Nevertheless, an "expert's testimony must be reliable at each and every step or else it is inadmissible." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016) (quoting *Knight*, 482 F.3d at 355).

"The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). "The proponent need not prove to the judge that the expert's testimony is correct, but

[it] must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). On the other hand, if "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable, as "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ourts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). These factors, however, are not definitive or exhaustive. The reliability inquiry is flexible, and the district court conducting the *Daubert* analysis has discretion in determining which factors are most germane in light of the nature of the issue, the particular expertise, and the subject of the expert's testimony. *Daubert*, 509 U.S. at 593-95; *Kumho Tire Co.*, 526 U.S. at 142.

The Advisory Committee's Notes to Rule 702 contemplate that expert testimony may be based on experience, training, or both:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) (design engineer's testimony can be admissible

when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

The Advisory Committee's Notes to Rule 702 further explain: "If the witness is relying solely or primarily on experience, then [he or she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* This is because the "trial court's gatekeeping function requires more than simply taking the expert's word for it" that the claimed basis supports the opinion. *Id.* (citation and internal quotation marks omitted); *Pipitone*, 288 F.3d at 245-47 (finding expert testimony reliable when the expert explained how his experience in the field led him to opine that an absence of contamination of some samples did not undermine his conclusion that the plaintiff's infection came from the same drug). Overall, the trial court must strive to ensure that the expert, "whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. As stated earlier, the relevance and reliability of expert testimony turn upon its nature and the purpose for which its proponent offers the testimony. *See, e.g., Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) ("Of course, whether a proposed expert should be permitted to testify is case, and fact, specific.") (citing *Kumho Tire*, 526 U.S. at 150-51).

The district court's gatekeeping role, however, is not meant "to serve as a replacement for the adversary system: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)); *accord Williams*, 898 F.3d at 624 (quoting *Daubert*, 509 U.S. at 596). Thus, the district court's "*Daubert* analysis should not supplant trial on the merits," *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citation omitted), and, generally speaking, issues regarding the bases and sources of an expert's opinion that affect the weight of an opinion rather than the admissibility of the opinion "should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The reasoning behind this general rule is consistent with the Advisory Committee's Notes to Rule 702, which state:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

At times, practitioners confuse and misapprehend Federal Rules of Evidence 701 and 702. Rule 701 pertains to opinion testimony by lay witnesses, and Rule 702 pertains to opinion testimony by experts or specialists in a particular field. The difference between the types of opinion testimony is aptly stated as follows:

> If the witness is only testifying as a lay witness, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences [that] are (a) rationally based on the perception of the witness[;] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue[;] and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning [that] can be mastered only by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (internal quotations omitted). As explained by the

> Second Circuit, "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Moreover, any part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701. Fed. R. Evid. 701 advisory committee's note.

*United States v. Cooks*, 589 F.3d 173, 179-80 (5th Cir. 2009).

## III.   Analysis

Landstar seeks to present Officer Cortemelia as a Rule 702 expert witness to testify that Ms. Bailon caused the accident at issue. Ms. Bailon, however, seeks to exclude his expert testimony and causation opinion, asserting that he is unqualified to render an opinion on causation and that his expert testimony is unreliable. Specifically, she asserts as follows:

> Officer Christopher Cortemelia was the responding officer to the scene of the accident. Officer Cortemelia subsequently issued a police report that purportedly stated the details of what happened—despite the fact that he did not witness the accident. *See* Ex. A: Police Report. Officer Cortemelia's report provides a narrative that Plaintiff was traveling eastbound on IH20 and "attempted to change lanes to go toward northbound IH635 at the last minute." *Id.* at 2. His report continues by stating that Plaintiff's vehicle (Unit #1) "clipped the front left wheel and bumper of Unit #1 [sic] causing Unit #1 to spin out in front of Unit #2. Unit #1 then slid across the highway and then collided with the towed unit of #2." *Id.*
>
> Officer Cortemelia states these as his conclusions despite not witnessing the incident, arriving 20 minutes after the collision occurred, failing to explain whose account(s) his report is based on, and failing to follow even the basis accident investigation protocols that he says are necessary when investigating a collision. Officer Cortemelia also fails to explain how he determined the movement of the vehicles, where the vehicles were at the point of impact, what lane the vehicles were in, or how "physics" would dictate that the collision occurred exactly how he wrote in his report.
>
> Despite these deficiencies, Defendants are seeking to utilize his testimony and opinions as an expert witness to establish causation at trial. These efforts are presumably based on Officer Cortemelia supposedly having responded to hundreds of motor vehicle accidents during his career. However, as his deposition testimony makes clear, the quantity of responses to accident scenes does not establish Officer Cortemelia as someone qualified to give expert testimony regarding causation in this accident—particularly where the data he relied on and the investigative methods he applied—if any—are so blatantly deficient.

**Memorandum Opinion and Order – Page 9**

Pl.'s Mot. 2-3. For these reasons, Ms. Bailon asserts that Officer Cortemelia is not qualified to offer an expert opinion regarding the cause of the accident, and that his testimony regarding accident causation is inherently unreliable, will mislead the jury, and should be excluded.

After reviewing the materials submitted by the parties, the court determines that Officer Cortemelia is not qualified to offer an opinion on the causation of the accident. The court further determines that his testimony is unreliable and, at times, not relevant; and, therefore, must be excluded.

### A.    Officer Cortemelia's Qualifications

With respect to Officer Cortemelia's qualifications, Ms. Bailon asserts that Officer Cortemelia is unqualified to render a causation opinion for the collision at issue because he "has only conducted a 'basic' investigation, and has never employed the techniques for 'immediate' or 'advanced' accident investigation, and cannot even remember what those techniques are."  Pl.'s Mot. 5; *see also* Cortemelia Dep. Tr., Doc. 58-2 at 252:8-253:19.

In response, Landstar contends that Officer Cortemelia's training and experience qualify him to offer an opinion on causation.  Specifically, it asserts that Officer Cortemelia has twenty-two years of experience investigating traffic accidents as a police officer, and, that during that time, he has investigated thousands of vehicular accidents, including those involving cars and commercial vehicles.  Landstar further contends that Officer Cortemelia regularly investigates accidents at this intersection and is intimately familiar with not only the location but also "the geometry of the location, the exits, the lanes, [and] signage[.]"  Def.'s Resp. 5 (citing Cortemelia Dep. Tr. 191:7-12).

Additionally, Landstar asserts that Officer Cortemelia received intermediate and advanced training in accident investigation in the months prior to the accident at issue but also acknowledges

that he did not have any accident reconstruction training. It asserts, however, that accident reconstruction training is not legally required for an officer to offer an opinion on the cause of a motor vehicle accident and further asserts that the accident at issue was "'just a normal accident,' which did not require Officer Cortemelia or any other officer to rely on accident reconstruction training or a physics principle to reach a conclusion regarding causation." *Id.* at 6; *see also* Cortemelia Dep. Tr. 175:20-176:9. Accordingly, Landstar asserts that Officer Cortemelia was able to "rely on basic accident investigation skills and his years of experience investigating numerous accidents at the intersection to reach his opinion regarding *how* and *why* the accident occurred." *Id.* at 7.

Ms. Bailon disagrees with Landstar's assertions and contends that "the simple fact that Officer Cortemila[sic] investigated other accidents does not automatically qualify him to offer expert causation opinions in this action," as he has never actually witnessed an accident between a passenger vehicle and 18-wheeler like the one at issue here. Pl.'s Reply 2 (citing Cortemelia Dep. Tr. 306:17-307:20). Additionally, she asserts that he cannot testify about the "physics" of how this accident allegedly occurred because he has never employed any of the intermediate or advanced accident investigation training techniques. Thus, Ms. Bailon asserts that Officer Cortemelia is unqualified to offer an opinion on the cause of this accident. The court agrees.

A 702 witness can be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Moreover, while formal training and certificates are certainly factors in making determinations concerning an expert's qualifications, experience alone may be the primary or sole basis for reliable expert testimony. Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments). Officer Cortemelia has twenty-two years of experience investigating accidents, and, for more than nine of those years, he has investigated accidents primarily at the interchange

between Interstate Highway 20 and Interstate Highway 635 North in Balch Springs, which is a significant consideration.  The issue, however, as Plaintiff highlights, is that Officer Cortemelia never testifies or intimates that he has experience investigating accidents involving an 18-wheeler and a passenger vehicle that occurred in the same or similar manner as the accident involved in this action.  The court acknowledges that he has investigated accidents involving commercial vehicles and passenger vehicles, but there is no indication that this *general* experience qualifies him as an expert on causation under these circumstances.

Moreover, that Officer Cortemelia has not witnessed an accident like the one at issue further undermines his qualifications as an expert on causation in this matter.  Further, there is no testimony or indication that he has observed an accident similar to that involved here or that he has reviewed any treatise or authoritative publication to show that the accident would occur as he described it. Additionally, there is nothing in the record to establish that he has reviewed footage of this type of accident that would show that the accident occurred as he explains.

As Ms. Bailon highlights, Officer Cortemelia's qualifications are also undermined because, despite attending both intermediate and advanced accident investigation training, he cannot recall what was taught in those trainings, and he admits that he has not used techniques from either training in the field.  The court cannot reasonably determine that basic knowledge of accident investigations is sufficient to qualify an officer to, in essence, reconstruct an accident and render an opinion on the ultimate cause of it.  Thus, without more, the court determines that Officer Cortemelia is not qualified to testify on causation.

The court does not discount Officer Cortemelia's experience in the field, but Landstar has failed to demonstrate that he has the knowledge, skill, experience, or training to render a causation

opinion for the accident at issue.  For these reasons, the court will grant Ms. Bailon's Renewed Motion to Exclude, as Officer Cortemelia is unqualified to testify as a 702 witness.

### B.      Reliability and Relevance of Officer Cortemelia's Testimony

Even if the court determined that Officer Cortemelia is qualified to render an opinion on causation, his testimony is unreliable and, at times,  not relevant. Ms. Bailon asserts that Officer Cortemelia's testimony is unreliable because he failed to follow the accident investigation protocols discussed in his deposition, based his opinion on insufficient data and information, and employed a flawed methodology. She further asserts that Landstar's contention that this is "just a normal accident" suggests that the collision is simple enough that the jury will not be aided by Officer Cortemelia's opinions and, thus, is not relevant.  For these reasons, she contends that his testimony and opinion on causation should be excluded.  The court agrees, but not for all of the reasons articulated by Ms. Bailon.[3]

First, with respect to the reliability of Officer Cortemelia's testimony, Ms. Bailon asserts that Officer Cortemelia's alleged failure to use intermediate or advanced automobile accident investigation techniques in assessing the accident scene renders his opinion unreliable. This, however, is of no moment because she fails to demonstrate that this accident required the use of advanced techniques considering Officer Cortemelia's testimony that only basic automobile investigation techniques were required.

Second, Ms. Bailon contends that Officer Cortemelia's opinion is based on insufficient information and data. She specifically highlights that Officer Cortemelia provides conflicting testimony as to whether he spoke with either her or Mr. Percival directly, though he eventually

---

[3] Whether the court agrees with every reason set forth by Plaintiff is quite beside the point.  As part of its gatekeeping function, the court must ensure that expert testimony complies with Rule 702, *Daubert*, and *Kuhmo Tire*, at every phase, even if an issue is not raised by a party.  *Carlson*, 822 F.3d at 199, 201.

confirmed that he spoke with Mr. Percival on the scene. She further highlights he cannot remember what information, if any, was obtained from other witnesses to the accident because he did not personally speak with any of them, and cannot recall what information may have been relayed to him by other officers on the scene.

That Officer Cortemelia cannot recall from whom he obtained certain information is not necessarily fatal to the reliability of his ultimate opinion, as an expert's opinion may be based on facts or data that he has been made aware of by others, even if inadmissible at trial, if experts in his particular field would reasonably rely on those kinds of facts in forming their opinion on the subject. Fed. R. Evid. 703. Moreover, Officer Cortemelia testified that his opinion on causation was based on several other factors, including: (1) statements from Mr. Percival regarding which lane he was traveling in at the time of impact; (2) the skid and yaw marks present on the roadway; (3) the damage to the vehicles; (4) his "visualization" of how the accident occurred; and (5) the role of physics in automobile collisions. Thus, his reliance on other factors is the focus of the court's inquiry as to whether his testimony is reliable.

The crux of Officer Cortemelia's causation opinion is that he "visualized" how the accident occurred based on his assessment of the damage to the vehicles, the yaw marks left on the roadway by Ms. Bailon's vehicle, and the involvement of "physics." The issue, however, is that he fails to sufficiently explain or develop how his method of "visualization" is a reliable methodology in the field when rendering an opinion as to the cause of an accident. He also fails to sufficiently explain how the underlying data relied upon in crafting his visualization is sufficient for him to render an ultimate opinion on who caused the accident. Moreover, as his ultimate opinion is based solely on his experience in the field, it is incumbent upon him to sufficiently explain or develop how his experience supports his approach and ultimate opinion. Yet, despite the court's prior instructions

**Memorandum Opinion and Order – Page 14**

to the parties and the opportunity to redepose Officer Cortemelia on these issues, his testimony does not follow the blueprint set forth in the court's prior opinion.

First, the court determines that Officer Cortemelia's use of visualization is an unreliable methodology for rendering an opinion on causation. When asked to clarify what visualization entails Officer Cortemelia stated in a conclusory fashion:

> You look at the scene as a whole. And I had, you know, time to visualize it; look at it; see where her car slid off the road and then come back.  And as to where the 18-wheeler was, if it was in the middle of the Lane 3, and then go back from there just seeing the damage and seeing the locations.

Cortemelia Dep. Tr. 274:1-6.  He also acknowledged that he based his determination regarding the placement of the vehicles on Mr. Percival's on-the-scene statement alone and had no other basis for determining where the point of impact occurred other than his visualization.  At no point, however, does he provide any testimony that the use of visualization is a reliable methodology based on his experience or training, or a methodology that is commonly used in the field to determine the cause of the accident.

Moreover, Officer Cortemelia acknowledges that his use of visualization was not based on any special tools but instead was based on his experience working accidents at the intersection involved and working accidents in general.  *Id.* at 276:5-7.  Thus, the court reasonably infers that he did little beyond imagining how the accident occurred based on assumptions about previous accidents he has investigated without any sound basis to determine that the accidents occurred in the same or similar manner.  The court, therefore, determines that his ultimate opinion that Ms. Bailon caused the accident is speculative based on an unreliable methodology and must be excluded.

Even if visualization is a reliable method to determine causation, Officer Cortemelia fails to sufficiently explain how the underlying information relied upon to support his visualization is

reliably linked to his ultimate opinion on causation. First, Officer Cortemelia testified that the yaw and skid marks on the roadway helped him visualize how the accident occurred. Specifically, he stated that, by using the marks as a guide, he backtracked from the placement of Ms. Bailon's vehicle after the accident to where the 18-wheeler was located in Lane 3 and, in doing so, was able to visualize how the accident happened. His reliance on the yaw and skid marks, however, is subjective at best and, thus, unreliable.

Notably, despite his reliance on these marks, he cannot sufficiently explain how he differentiated marks associated with this accident from the many other marks present on the scene prior to this collision. In his deposition, he was questioned on this precise issue:

> **Q:** Can you describe what the difference is there? How can you tell a skid mark from that day versus a skid mark from the day before versus a week before? How do you do that?
>
> **A:** It's a little hard to explain without showing you. You've just got to know the intersection, I guess. And I – I know the intersection. It's in my city. Where the accident happened and where the 18 – 18-wheeler, you know, all that stuff lined up and her car. Like I said, you backtrack. And then you can see what her – you know, concur [sic] it with the accident. Now, if they were just three or four different cars that hit the brakes and slid all over the place, then that would be a little difficult.

*Id.* at 274:23-275:10; *see also id.* at 290:9-291:1. He further testified that he relied only upon his visualization and experience working accidents in general—no other special tools—to trace the path of the vehicles based on the yaw and skid marks. *Id.* at 275:25-276:7; 291:6-15. The court notes that Officer Cortemelia's experience may serve as a basis for his opinion; however, he fails to articulate how visualizing and backtracking is a reliable method for determining that the yaw and skid marks relied upon were related to this accident. Moreover, he provides no testimony as to how those marks dictate that Ms. Bailon caused the accident. Instead, the only connection between his ultimate opinion on causation and the yaw and skid marks is his *ipse dixit* that the two are related, which is insufficient to establish reliability.

**Memorandum Opinion and Order – Page 16**

Similarly, the court determines that there is too great of an analytical gap between Officer Cortemelia's assessment of the damage to the vehicles and his opinion that Ms. Bailon caused the accident.  In assessing the damage to the vehicles, he asserts that the damage he observed supports his opinion because the bumper of the 18-wheeler was pulled away from the truck, which indicates that Ms. Bailon hit the 18-wheeler.  He further contends that had Mr. Percival hit Ms. Bailon, "her rear fender would have looked like a cheese grater, because the wheels on the tractor-trailer would have just torn the fender up.  Because he is pushing into her, and his bumper would have went back towards his tire, not came out – but would have went into his tire."  *Id.* at 128:1-9. He also discusses and considers the potential damage in a number of hypothetical situations. While Officer Cortemelia's testimony regarding his assessment of the vehicle damage is thorough, he again fails to adequately explain how his visual assessment provides a sufficient basis to render an opinion on who caused the accident.

With respect to Officer Cortemelia's reliance on physics as a basis for his opinion, the court determines that this too is an unreliable basis despite Officer Cortemelia engaging in a detailed discussion on his reliance of physics.  For example, the line of questioning below summarizes his view of the role of physics:

> **Q:** And my question is just a little bit different. I'm talking about – specifically about the physics because you reference the role that physics played in this – in this accident, right? And so I want to hone in on that and get your explanation of the importance of physics as it relates to this incident and also the role that physics played in – well, how it dictated that the accident occurred the way that's [sic] it [is] written in your report.

> **A:** Well, the momentum of Unit 1 has a lot to do with the way it happened. Because if they're going at a straight location and they gas the vehicle to pass somebody – if you gas a vehicle to pass, and you go and change lanes and clip somebody in the front, your momentum is going to pull you [in] that direction.  I explained that awhile ago.  Because if you're going straight and you gas it to pass somebody and you clip somebody, the momentum and the impact [are] going to throw your vehicle in that same direction, (indicating).  It's not going to go

> anywhere else but that direction, (indicating, because you're [in] pushing that
> direction.  That's the way I see it.

*Id.* at 297:19-298:14. Officer Cortemelia also testifies that Ms. Bailon's vehicle would have spun

out of control even had she clipped a passenger car with her vehicle rather than a tractor-trailer.

*Id.* at 299:18-300:5.

   When asked whether Ms. Bailon's car would have spun out if Mr. Percival had hit Ms.

Bailon, Officer Cortemelia testified that it would not have because the 18-wheeler would have

pushed her vehicle further to the left rather than cause her to spiral.  *Id.* at 303:20-306:4.

Additionally, he testified that, even assuming a passenger car clipped the rear bumper of Ms.

Bailon's vehicle, her vehicle would be pushed and not spun around unless the vehicle "actually go

[sic] and pit [] which doesn't normally happen."  *Id.* at 300:6-11.  He further explained that a "pit"

is when:

> another car actually goes and just turns in hard and hits your back bumper whichever
> direction.  Then you're going to spin. But it's not normally spinning all the way in
> front and around because the momentum is from the other car hitting you.  You
> normally spin out and just go wherever – straight or to the left.  I haven't seen that
> go opposite direction.

*Id.* at 300:12-20. He also testified, however, that his police department does not use the "PIT"

technique.[4]

---

[4] "PIT" stands for Pursuit Immobilization Technique or Pursuit Intervention Technique. The undersigned notes that Officer Cortemelia has a flawed understanding of a PIT. When a law enforcement officer decides to use the PIT, he must first match speed with the fleeing vehicle. Once this has occurred, the officer's vehicle bumps the fleeing vehicle between the rear wheel and back bumper, and then accelerates into the fleeing vehicle. In a properly executed PIT, the struck vehicle will usually make a 180-degree turn ("U-turn"), or at least a half circle.

   In other words, if the officer's car strikes the fleeing car on the driver's side, the fleeing car will make a 180-degree turn to the left. If the officer strikes the car on the passenger side, the fleeing car will make a 180-degree turn to the right.  Now, all PITs do not end in this manner because the initial bump may not have been made at the correct place on the fleeing vehicle, and because speed and the weight of the vehicles can affect how a fleeing car spins out. Contrary to Officer Cortemelia's testimony, his testimony does not square with the many footages of the PIT maneuver that the court has viewed, the police material reviewed by the court on the PIT maneuver, or the live execution of the PIT maneuver that the court personally observed during a chase on Interstate Highway 35 some years ago.  Moreover, he fails to convince the court that had the front portion of Mr. Percival's vehicle struck Ms. Bailon's vehicle on the passenger side between her rear wheel and bumper that it was unlikely her vehicle would have spun out like it did.

Considering another alternative theory, Officer Cortemelia asserts that the accident would not have occurred as it did here if Ms. Bailon and Mr. Percival had hit each other while attempting to switch lanes because the momentum would not be as forceful or fast, and, thus, she would not have spun around the 18-wheeler. *Id.* at 302:6-25. Again, he relies on his assessment of the damage to the vehicles and his determination that the weight of the 18-wheeler would push, and not pull, Ms. Bailon's car. *See id.*; *see also id.* at 304:9-305:9. Notably, he discusses momentum and the weight of the vehicles but also admits that he does not know how fast the cars were traveling and did not know the weight of Ms. Bailon's vehicle.

Despite the substantive discussion regarding Officer Cortemelia's reliance on physics, he fails to sufficiently explain how the physics of the accident supports his ultimate opinion on causation. Instead, he discusses the role of physics in general terms based on what he has experienced while investigating accidents in the field, but he does not explain how that experience and understanding of physics from working other accidents apply to the accident involved here. The often-rambling explanations in an attempt to explain the link between physics and his opinion cause more confusion and sheds no light as to how physics was a reliable basis for his opinion. Accordingly, the court determines that the link between Officer Cortemelia's reliance on his visualization and his ultimate opinion on causation—even considering his assessment of the yaw and skid marks, damage to the vehicles, and physics—is too attenuated to be reliable.

While Officer Cortemelia attempts to close the gap by relying on his experience in the field to create an adequate basis for his opinion, he fails to adequately explain how his experience working other accidents is sufficient to support his causation opinion with respect to the one involved here, or that he reliably applied his experience to the facts of this case beyond conclusory assumptions. Additionally, as previously discussed, he makes no assertion that the use of

visualization is a methodology that he commonly uses in the field to assess the scene of an auto

accident, or that it is a reliable methodology that others in the field use to assess the scene.  To the

extent he does expound on the correlation between his experience and the opinion proffered, his

discussion is addressed in general terms, which does not allow the court to reasonably determine

that his experience alone is a sufficient basis for his opinion.  An opinion based solely or primarily

on experience still requires a meticulous review from the court, and, without more, the court

determines that Officer Cortemelia has failed to adequately develop or explain how his experience

is a sufficient and reliable basis for his opinion.

For all of these reasons, the court determines that Landstar has failed to demonstrate that

Officer Cortemelia's testimony is reliable at all stages of the inquiry.  *Carlson*, 822 F.3d at 201.

Thus, even if the court had determined that Officer Cortemelia was qualified as a 702 witness to

render an opinion on causation, his testimony and ultimate opinion would be excluded because it

is unreliable.  The court, therefore, will grant Plaintiff's Renewed Motion to Exclude (Doc. 58) on

this basis as well.

The court will also grant Plaintiff's Renewed Motion on the basis that Officer Cortemelia's

testimony is not relevant at times. As Ms. Bailon notes, Landstar cannot have it both ways.  Either

the accident at issue was "just a normal accident" that does not require expert testimony or it does.

Landstar's own assertion brings the relevance of expert testimony into question.  Moreover,

Officer Cortemelia acknowledged that explaining how he differentiated between fresh and old yaw

and skid marks, or explaining the role of physics in the collision was difficult.  Cortemelia Dep.

Tr. 202:6-15.  If a proposed expert finds it difficult to explain to lawyers the nexus between the

facts in issue, his methodology, and his ultimate opinion, he will not be able to do so for laypersons

tasked with serving on the jury.  Thus, his expert testimony is not only unreliable but not relevant,

**Memorandum Opinion and Order – Page 20**

as it does not "assist the trier of fact in understanding the evidence or to determine a fact issue." *Daubert*, 509 U.S. at 591. Accordingly, Officer Cortemelia's testimony will be excluded on this basis as well.

Although the court has excluded Officer Cortemelia's testimony and opinion as a 702 witness, the court will permit Officer Cortemelia to testify as a lay witness under Federal Rule of Evidence 701, as he was a responding officer to the accident. Accordingly, he will be allowed to testify as to his opinions or inferences that are (1) rationally based on his perceptions (including the skid and yaw marks observed at the scene, the location of the vehicles, and any resulting damage from the accident); (2) helpful to a clear understanding of his testimony or the determination of a fact in issue; and (3) not based on any scientific, technical, or other specialized knowledge. *Cooks*, 589 F.3d at 179-80 (citing Fed. R. Evid. 701). He may not, however, render an opinion as to the ultimate cause of the accident because an officer's lay "opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene" are excluded under Rule 701. *Duhon v. Marceaux*, 33 F. App'x 703 (5th Cir. 2002).

## IV.    Conclusion

For the reasons herein stated, the court **denies as moot** Plaintiff's First Renewed Motion to Exclude the Opinions and Testimony of Officer Christopher Cortemelia (Doc. 57); and **grants** Plaintiff's Renewed Motion to Exclude the Opinions and Testimony of Officer Christopher Cortemelia (Doc. 58), as Officer Cortemelia is not qualified to testify as a 702 witness and his testimony and ultimate opinion is both unreliable and at times not relevant. As discussed, the court **will allow** Officer Cortemelia to testify as a lay witness within the scope of Federal Rule of Evidence 701, as he was one of the responding officers to the scene of the accident.

The court also **denies** Plaintiff's Motion to Set a Status Conference (Doc. 62).  Instead, the court **directs** the parties to confer and file a joint status report, indicating five separate dates in three different months starting **February 2021** on which all parties and witnesses are available for trial. This joint report **shall** be filed no later than **December 14, 2020.**

**It is so ordered** this 30th day of November, 2020.

Sam A. Lindsay
United States District Judge